IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING<br>CORPORATION CHALET SHINGLE<br>PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495<br>1:13-md-2495-TWT |
| BRIAN DAVID SELTZER<br>on behalf of himself and all others<br>similarly situated,<br>   Plaintiff,<br>      v.<br>ATLAS ROOFING CORPORATION,<br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:13-CV-4217-TWT |

**OPINION AND ORDER**

This action arises out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 58]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 58] is GRANTED.

**I. Background**

The Plaintiff Brian David Seltzer is the owner of a home containing Atlas Shingles (the "Shingles").[1] The Defendant Atlas Roofing Corporation designed,

---

[1] It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. *See* Primary Mot. for Class Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. *Id.*

manufactured, and sold the Shingles.[2] The Defendant developed the Shingles in the 1990s as a line of "overlay" products intended to provide an affordable shingle with the look of the more expensive architectural shingles.[3] In 2010, the Defendant discontinued sales of the Shingles.[4] The Plaintiff alleges that the Shingles are defective in design, and filed this action seeking to represent a class of homeowners who own homes with the Shingles.

In 2003, the Plaintiff purchased his home in Cleves, Ohio from a builder.[5] Prior to the completed construction of the home, the Plaintiff decided to upgrade his roof.[6] The Plaintiff claims that he and his wife chose the Shingles after viewing a booklet of sample shingles with the builder.[7] The Plaintiff purchased the newly-constructed home with the Shingles already purchased and installed by a contractor.[8] In 2005, the Plaintiff noticed granule loss from his roof that prompted him to contact his builder.[9] In 2012, the Plaintiff filed a claim with his

---

[2] Pl.'s Statement of Additional Material Facts ¶¶ 1-2.

[3] *Id.* ¶ 2.

[4] *Id.* ¶ 33.

[5] Def.'s Statement of Material Facts ¶ 1.

[6] Pl.'s Statement of Additional Material Facts ¶ 13.

[7] *Id.* ¶ 14.

[8] Def.'s Statement of Material Facts ¶¶ 2-3.

[9] Pl.'s Statement of Additional Material Facts ¶ 37.

insurance company for damage to his roof.[10] In May 2013, the insurance company paid to replace the Shingles on the Plaintiff's roof.[11] The Shingles were removed and replaced with a different brand of shingles.[12] The Plaintiff did not keep any of the Shingles that were removed from his roof.[13] According to the Plaintiff, prior to this replacement, an inspector observed a leak in the Plaintiff's garage.[14] After the insurance company replaced the Plaintiff's roof, the Plaintiff filed a warranty claim with the Defendant.[15] The Defendant informed the Plaintiff that he needed to submit a sample of the Shingles on his roof, which he was unable to do.[16]

On July 9, 2013, the Plaintiff filed this action in the U.S. District Court for the Eastern District of Kentucky. On December 20, 2013, the Judicial Panel on Multidistrict Litigation transferred this action to be consolidated with the multidistrict litigation pending before this Court.[17] The Plaintiff's remaining claims are for product defect in design or formulation under the Ohio Products

---

[10] Def.'s Statement of Material Facts ¶ 5.

[11] *Id.* ¶ 7.

[12] *Id.* ¶ 10.

[13] *Id.* ¶ 11.

[14] Pl.'s Statement of Additional Material Facts ¶ 38.

[15] Def.'s Statement of Material Facts ¶ 12.

[16] *Id.* ¶¶ 12, 14.

[17] *See* Transfer Order [Doc. 16] under No. 1:13-cv-004217-TWT.

Liability Act (the "OPLA") (Count I), negligence (Count II), unjust enrichment (Count III), declaratory relief (Count IV), breach of express warranty (Count V), and breach of implied warranties of merchantability (Count VI). The Defendant now moves for summary judgment as to each of these claims.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[18] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[19] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[20] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[21] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[22]

---

[18] FED. R. CIV. P. 56(a).

[19] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[22] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

### A. Causation and Damages

First, the Defendant argues that the Plaintiff's claims fail because he has failed to produce evidence establishing causation and damages.[23] Specifically, the Defendant contends that the Plaintiff has provided no evidence showing that his damages were caused by a defect in the Shingles.[24] The Plaintiff responds that the expert opinion of Dean Rutila creates a dispute of fact as to causation.[25] However, the Court concludes that the Plaintiff has failed to produce sufficient evidence as to causation to avoid summary judgment on this issue.

Causation is an essential element of claims for negligence and strict products liability.[26] As this Court previously noted, "the alleged defect in the Shingles must have caused a class member's injuries in order for that class member to recover."[27] "If the roof fails due to hail or wind damage or improper

---

[23] Def.'s Mot. for Summ. J., at 4.

[24] *Id.*

[25] Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 6.

[26] *See In re Meridia Prods. Liability Litig.*, 328 F. Supp. 2d 791, 797 (N.D. Ohio 2004) ("If Defendants are correct, then Plaintiffs' claims for strict liability (all theories thereof), negligence, and negligence per se must fail. After all, causation of an alleged injury is an element of each of these claims."); *see also Macy & Co. v. Otis Elevator Co.*, 554 N.E.2d 1313, 1316 (Ohio 1990) ("In order for a party to recover in an action for products liability based upon strict liability in tort, several elements must be proven, including the one that the damage or injury was directly and proximately caused by the product defect.").

[27] *See* [Doc. 57] at 22.

installation, the homeowner-class member has not been damaged."[28] According to the Defendant, the Plaintiff has failed to provide evidence that the alleged defect in the Shingles, and not some other factor such as hail or wind damage, caused his damages. The Plaintiff, in response, argues that Dean Rutila's expert opinion creates a factual dispute as to causation that allows his claims to survive summary judgment.[29] The Plaintiff highlights Rutila's conclusion that deterioration of the Shingles studied was so severe that future failures, such as leaks, were inevitable, and that there were most likely other roofs out there that have already leaked due to defects in the Shingles.[30] According to the Plaintiff, this conclusion, coupled with the Plaintiff's personal observation of granule loss from his roof, creates a triable issue of fact as to whether the defects in the Shingles caused the damage to his roof.[31]

However, the Plaintiff has not satisfied his burden as to causation because he has failed to provide sufficient evidence that a reasonable jury could rely upon to conclude that the Shingles caused his alleged damages. Evidence that the Shingles are defective in general, and could cause leaks in general, is not enough to establish that the specific damage to the Plaintiff's home resulted from defects in the Shingles on his roof. To recover for these injuries, the

---

[28] *Id.*

[29] Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 6.

[30] *Id.*

[31] *Id.*

Plaintiff must prove that the alleged defect caused his Shingles to prematurely fail, not just that the defect exists. Rutila's expert opinion does not establish that the leak in the Plaintiff's roof resulted from a defect in the Shingles. Rutila studied 351 roofs, not including the Plaintiff's roof. Rutila admits that he was unable to show that any of the alleged defects in the Shingles, including blisters, cracks, and loss of granule surfacing, resulted in a leak in any of the roofs he studied.[32] In fact, he concedes that none of the roofs he studied had experienced any leaks as a result of manufacturing defects in the Shingles.[33] Instead, Rutila stated that he believed that the Shingles studied "will leak" in the future.[34] The Plaintiff has provided no other evidence in support of this proposition. In fact, the Plaintiff has not provided any evidence of causation specific to the Shingles on his roof. Rutila's findings, if taken as true, merely establish that the Shingles generally have a defect, and that, in general, this defect could cause roofs to fail in the future. This evidence is not sufficient to establish that a manufacturing defect, as opposed of other causes, such as improper installation, inadequate ventilation, or environmental factors, caused the specific damages that the Plaintiff has alleged.

---

[32] Rutila Dep. at 84-85, 124, 167.

[33] *Id.*

[34] *Id.* at 84-85.

Thus, the Plaintiff cannot claim damages resulting from a failure of the Shingles. Even if the Plaintiff proves a defect existed in the Shingles in general, he cannot recover damages based on that fact alone. He also must prove that the alleged defect, and not some other factor such as wind or hail damage, caused his roof to prematurely fail.[35] The evidence that the Plaintiff has produced fails to do this. Since this evidence would not allow a reasonable jury to conclude that a defect in the Shingles caused his roof to leak, the Plaintiff cannot recover for damages resulting from that leak.

Therefore, the Plaintiff can only show that the Shingles exhibited granule loss and blistering. However, this is a form of economic loss, which the Plaintiff cannot recover for under his claims for negligence and violation of the OPLA. "The economic-loss rule generally prevents recovery in tort of damages for

---

[35] *See* [Doc. 57] at 23 ("[The Plaintiffs] also must prove that the alleged defect caused their roof to prematurely fail. For the class members who have already had their roofs replaced or repaired, this will be an especially fact-intensive inquiry."); *cf. Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 605 (3d Cir. 2012) ("[I]t is undisputed that even if Marcus could prove that Bridgestone RFTs suffer from common, class-wide defects, those defects did not cause the damage he suffered for these two tires: the need to replace them. In this sense, Marcus is no different than a class member who, seconds after buying his car, pulls off the dealership lot and runs over a bed of nails, as neither can claim a 'defect' caused his tires to go flat and need replacement. Because Marcus's common law claims require an individualized inquiry into why any particular consumer's Bridgestone RFTs went flat and had to be replaced, the District Court abused its discretion in finding that the claims satisfy the predominance requirement.").

Purely economic loss."[36] "Under the economic loss rule, plaintiffs who have only suffered an economic loss from a defective product—defined as losses attributable to the decreased value of the defective product itself (direct economic loss) and consequential losses by the purchaser of the defective product (indirect economic loss)—cannot recover economic losses premised on tort theories of recovery."[37] Furthermore, "[i]t is well-established that under the OPLA, claimants cannot recover only economic damages."[38] Therefore, since the Plaintiff cannot prove that a defect in the Shingles caused a roof leak or any other type of external injury, and since the OPLA and Ohio tort law do not allow recovery for purely economic loss, the Plaintiff's negligence and OPLA claims fail as a matter of law.

### B. Express and Implied Warranty Claims

Next, the Defendant moves for summary judgment as to the Plaintiff's warranty claims. The Defendant argues that the Plaintiff's warranty claims fail because: (1) the Limited Warranty does not cover wind damage; (2)

---

[36] *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005).

[37] *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters., Inc.*, 50 N.E.3d 955, 963-64 (Ohio Ct. App. 2015); *see also Shook, Inc.*, 835 N.E.2d at 704 ("The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.").

[38] *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 881 (N.D. Ohio 2013) (citing *State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc.*, 828 N.E.2d 701, 707 (Ohio Ct. App. 2005)).

representations in marketing materials were not part of the basis of the bargain; (3) the Plaintiff did not provide the Defendant with notice and the opportunity to evaluate the warranty claims; and (4) the Plaintiff lacks privity with the Defendant, which is necessary for a breach of implied warranty claim.[39] The Court concludes that the Plaintiff's warranty claims fail because he failed to provide adequate notice of his claims.

"To state a claim for breach of warranty under the UCC, plaintiff must plead that: 1) a warranty existed; 2) the product failed to perform as warranted; 3) plaintiff provided defendant with reasonable notice of the defect; and 4) plaintiff suffered injury as a result of the defect."[40] A buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."[41] If a plaintiff fails to provide this pre-litigation notice, then [his or her] breach of warranty claim must be dismissed.[42] "Notice of breach serves two distinct purposes. First, express notice opens the way for settlement through negotiation between the parties. Second, proper notice minimizes the possibility of prejudice to the seller by giving him 'ample opportunity to cure the defect, inspect the goods, investigate the claim

---

[39] Def.'s Mot. for Summ. J., at 6-10.

[40] *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008).

[41] OHIO REV. CODE ANN. § 1302.65(C)(1).

[42] *St. Clair*, 581 F. Supp. 2d at 902.

or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties.'"[43]

The Plaintiff argues that he provided adequate notice by filing a warranty claim with the Defendant before initiating this lawsuit. However, this notice, which was provided *after* the Plaintiff had already removed and replaced the Shingles, is insufficient under Ohio law.[44] To satisfy this requirement, the Plaintiff must provide notice before making any repairs or replacements.[45] In *Litehouse Products, Inc. v. A.M.I. International, Ltd.,* the Court of Appeals of Ohio dealt with a case where the "Plaintiff simply took it upon itself to repair the alleged defects without notifying defendant of any problems."[46] The court determined "that in such a case notice after the repairs were made and before defendant had any opportunity to take action was not reasonable."[47] Thus, "[i]n

---

[43] *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 826 (6th Cir. 1978) (internal citations omitted).

[44] *See Litehouse Prods., Inc. v. A.M.I. Int'l, Ltd.*, 1984 WL 4539, at *3 (Ohio Ct. App. Mar. 8, 1984) (concluding that "[t]he only notice to defendant concerning alleged defects" in the defendant's products did not satisfy the notice requirement because it "was made more than a year after plaintiff had effectuated repairs").

[45] *Id.* at *4.

[46] *Id.*

[47] *Id.*

order to avail itself of the warranty protections plaintiff was required to notify the defendant of the alleged defects <u>before</u> repair attempts were undertaken."[48]

This conclusion comports with the policies underlying the notice requirement. In *Litehouse Products*, the court explained that:

> [P]laintiff has failed to consider the reason for requiring timely notice to the seller. Under most circumstances reasonable notice of defect should be made prior to any attempted repairs unless the contract or warranty provides otherwise. This permits the seller time to correct the problem. If, after notice is given, the seller makes no response nor any attempt to rectify the situation, resort to self-help would not necessarily preclude recovery under warranty. Similarly, in an emergency situation a buyer may reasonably resort to self-help before notifying the seller of the problem.[49]

Thus, concluding that the Plaintiff's post-replacement warranty claim satisfies this requirement would not further the reasoning behind such a requirement. Here, the Plaintiff never provided the Defendant with the opportunity to cure any alleged defects in the Shingles. Since the Plaintiff did not provide proper notice, his warranty claims must fail.[50] The Plaintiff then argues that the sufficiency of his notice is, at a minimum, an issue of fact for a jury to decide.[51] However, the Plaintiff's purported notice is insufficient as a matter of law to

---

[48] *Id.*

[49] *Id.*

[50] *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) ("St. Clair's failure to notify Kroger of its alleged breach before bringing this lawsuit precludes her from proceeding further with her claim.").

[51] Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 11.

satisfy this requirement, and does not present a question of fact for the jury to decide.[52] Therefore, the Defendant is entitled to summary judgment as to the Plaintiff's warranty claims.

### C. Unjust Enrichment

Next, the Defendant moves for summary judgment as to the Plaintiff's unjust enrichment claim. "Unjust enrichment occurs when a person has and retains money or benefits which in justice and equity belong to another."[53] To prove an unjust enrichment claim under Ohio law, the plaintiff must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."[54] However, "unjust enrichment is not an available remedy when a plaintiff does not make her purchase directly from the manufacturer."[55] Since

---

[52] *Litehouse Prods., Inc.*, 1984 WL 4539, at *3 ("[P]laintiff contended that whether their notice to defendant a year or more after the defects were discovered was reasonable was a matter of fact for the jury to decide. We cannot agree.").

[53] *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (internal quotations omitted).

[54] *Id.*

[55] *Young v. Carrier Corp.*, No. 4:14CV0974, 2014 WL 6617650, at *7 (N.D. Ohio Nov. 21, 2014); *see also Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06CV763, 2007 WL 1725317, at *4 (N.D. Ohio June 13, 2007) (noting that an unjust enrichment claim failed because the "purchase of products within a 'chain of sale'" is insufficient to show that a plaintiff "has bestowed a benefit on a defendant").

the Plaintiff did not purchase the Shingles directly from the Defendant, his claim for unjust enrichment fails as a matter of law.

### D. Declaratory Judgment

Finally, the Defendant moves for summary judgment as to the Plaintiff's request for declaratory relief. 28 U.S.C. § 2201 provides that "[i]n a case of *actual controversy* within its jurisdiction," a federal court may render a declaratory judgment.[56] This language, which echoes the "case or controversy" requirement of Article III of the Constitution, requires that there "be a substantial continuing controversy between parties having adverse legal interests."[57] Since the Defendant is entitled to summary judgment as to all of the Plaintiff's underlying substantive claims for relief, no "actual controversy" exists.[58] Therefore, the Defendant is entitled to summary judgment as to the Plaintiff's request for declaratory relief.

### IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. 58] is GRANTED.

---

[56] 28 U.S.C. § 2201(a) (emphasis added).

[57] *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).

[58] Furthermore, due to the doctrine of *res judicata*, the Plaintiff will be barred from asserting any actions in the future relating to this set of facts. A declaratory judgment in this case would not have the practical consequence of a "significant increase in the likelihood that the [Plaintiff] would obtain relief that directly redresses the injury suffered," depriving the Plaintiff of standing. *See Utah v. Evans*, 536 U.S. 452, 464 (2002).

SO ORDERED, this 8 day of June, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge